COWING (UNITED STATES v.). See Case No. 14,880.

## Case No. 3,297.

### In re COWLES.

[1 N. B. R. 280 (Quarto, 42); [1] 1 West. Jur. 367.]

District Court, D. Minnesota. 1867.

ACT OF BANKRUPTCY — FRAUDULENT CONVEYANCE —SUSPENSION OF "COMMERCIAL PAPER"—"TRADER" DEFINED.

1. A debtor who executes a chattel mortgage to secure a preëxisting indebtedness with intent to delay, hinder, and defraud his creditors, commits an act of bankruptcy. It is not necessary to show the stoppage of payment of commercial paper was fraudulent; suspension of payment and non-resumption within fourteen days is all that is contemplated by this provision of the bankrupt act.

[Cited in Baldwin v. Wilder. Case No. 806; Re Hercules Mut. Life Assur. Soc., Id. 6,402.]

2. One who is engaged in the manufacture and sale of lumber is a trader, within the meaning of the said act.

[Cited in Re Kenyon, 1 Utah, 47.]

In bankruptcy. In this case a petition was filed by S. G. Renick, president of the First National Bank of Hastings, against the said [Walter C.] Cowles, alleging the commission of various acts of bankruptcy, and praying that he should be adjudged a bankrupt by the court. A day was fixed to show cause, a denial of the acts was filed, and by agreement the issues were tried by the court.

NELSON, District Judge, delivered a written opinion. He said the petition in substance charges: (1) That the said Cowles, being possessed of certain estate, rights, and credits, made a conveyance of the same with intent to delay, hinder, and defraud his creditors. (2) That said Cowles, being insolvent, made a conveyance with intent to give a preference to one of his creditors, and with intent to defeat the operation of the bankrupt act. (3) That, being a trader, the said Cowles has fraudulently suspended, and not resumed payment of his commercial paper within a period of fourteen days. On the return day of the order to show cause, a denial of the acts of bankruptcy was filed, and by agreement the issues were tried by the court. We shall consider the various acts of bankruptcy alleged in the order in which they are above enumerated.

The testimony shows that Cowles was engaged in the manufacture and sale of lumber in the city of Hastings, and that he, being in embarrassed circumstances, with an indebtedness, as stated by himself to be over thirty-seven thousand dollars, without any cash means, but other assets estimated as high as sixty thousand dollars, and as low as thirty-two thousand dollars, executed to the Merchants' National Bank of Hastings, on the 23d day of October, 1867, a chattel mortgage upon five hundred thousand feet of pine saw logs then lying in the St. Croix

[1] [Reprinted by permission.]

river at Prescott, Wisconsin, to secure the payment of three thousand dollars. That the money advanced to him at the time of the delivery of this mortgage was one thousand dollars, and that a due-bill was given for the balance, to be paid in weekly instalments. A part of the one thousand dollars advanced was used to release from an attachment the logs embraced in the mortgage, and the money to be paid by instalments was to be used for the purpose of defraying the expenses of sawing the logs into lumber. It appears that at this time his creditors were pressing him for the payment of their demands, and his answer invariably was that he would pay them as soon as he could cut his logs, and as fast as he could sell his lumber. These repeated statements appear to have satisfied his creditors, and they remained quiet until about the 22d day of November last, when some of them made an arrangement to take lumber for their indebtedness. Taylor & McHugh, and Pringle, commenced immediately to draw lumber from the yard, and continued until November 25th. when they were stopped by Van Dyke, president of the Merchants' National Bank, and by C. D. Tuttle, a merchant of Hastings, who claimed, in their own language, to "have chattel mortgages on the whole thing." It further appears from the testimony, that on the afternoon of the 23d of November, the day after Cowles had consented to allow Taylor & McHugh, and Pringle, to take lumber on account of their indebtedness, he executed a chattel mortgage upon all of the lumber in his yard, and upon all the logs in his boom, to Tuttle, to secure the payment of his note for two thousand five hundred dollars, that day given for supplies to be furnished during the following winter, to enable him to set men at work to cut saw logs in the pineries; and, also, that on the 25th of November he executed another mortgage to the Merchants' National Bank upon the same lumber and logs, to further secure the money which the bank had agreed to let him have in October. At this time his creditors were pressing him, and the institution of proceedings in bankruptcy against him was threatened. Cowles, in answer to their demands, says in his own language, "I am dead broke; I have no means; I can't pay." And also, that he did not think his creditors had better put him into bankruptcy; that his father had a claim of about twenty thousand dollars, which would sweep everything and leave but a small percentage to other creditors.

Now, are we authorized to declare upon this statement of the case, the first act of bankruptcy established? We think so. We readily agree with counsel that the intent to delay and hinder creditors is a question of fact to be proved; but the testimony necessary to establish it need be of no higher order than is required to prove any other fact. All the circumstances attending the transactions of the debtor, his conversations, his acts, his necessities, are to be taken into consideration, and his motive judged of by these. Put to this test, it seems to me there was a manifest design to hinder and delay creditors. We do not dispute the right of a debtor to mortgage his property, or a portion of it, for the purpose of raising money to pay his debts. Such a disposition of his property shows an honest and laudable intention on the part of a debtor to meet his liabilities. Courts always are inclined to sustain such transactions; but the conveyances by Cowles do not fall within that class of cases. They were not given for the purpose of raising means to pay off his importunate creditors, but for the purpose and with the manifest design of so incumbering his available means that they would be delayed and hindered in the collection of their demands. In fact, the president of the Merchants' National Bank says in his testimony, that when he took the mortgage in October he placed the balance of the money due Cowles to his own personal account in the bank, and gave him a due-bill, in order, as he says, that Cowles could say "no" to his creditors who asked for money, and could not use it to pay his debts. Cowles acquiesced in this, and says that when he wanted any of the money he procured the president's check on the bank for the amount.

Again, we find the second charge of bankruptcy true. The debtor cannot escape the conclusion to be drawn from his statements made prior to the last mortgage to the Merchants' National Bank, and immediately after the Tuttle mortgage was given. He told the witness (Fuller) at that time that his father had a claim that would sweep everything if bankruptcy proceedings were instituted against him. He has made no effort to explain this statement. It stands admittedly true, and notwithstanding his testimony that he had assets which he estimated worth sixty thousand dollars, we are constrained to believe that he was insolvent at that time. His statement about his father's demands, taken in connection with the evidence of other witnesses as to the value of his assets, establishes clearly his insolvency. There can be no doubt that the mortgage to the Merchants' National Bank, given in November, gave it a preference. The bank held his notes in October, and although a chattel mortgage was given at that time to secure them, Cowles executes this additional security, and must have intended the natural result of his own conduct. The counsel for the debtor relies upon the case of Curtis v. Leavitt, 15 N. Y. 9. It has no application to the state of facts as we find them here. The banking institution in that case, although embarrassed, had, at the time the trusts were created, assets over and above its liabilities; and the question decided by the court was, that such embarrassments did not create such a state of insolvency as was contemplated by the restraining act which it was

charged with violating. Besides, its property mortgaged consisted of choses in action, and creditors could not possibly be hindered or delayed by the mortgage. There are other dissimilarities to the state of facts in this case, which we think unnecessary to consider.

We now come to the charge that, being a trader, he has fraudulently suspended, and not resumed payment of his commercial paper within the period of fourteen days. We shall adopt the interpretation given this provision of the act by several of the district judges, namely, that it is unnecessary to show the stoppage of payment to have been fraudulent; suspension of payment and non-resumption within fourteen days is all that is contemplated by that provision. This view of the act presents uniformity of decision, based upon a fair and reasonable construction; and besides, it would seem that congress intended to make a failure to pay commercial paper within fourteen days after stoppage a test of insolvency. We have found no American decisions directly upon the point as to what constitutes a trader, but the decisions are numerous under the English bankrupt act of 1825, and are to be regarded as authority with us. The English statute specifies the description of traders who come within the act, and the effect of all the amendments prior to 1825 was to enlarge the classes of persons who, upon correct principles of bankrupt law, should be included within it. See introduction to Eden on Bankruptcy. Under that act the debtor would be regarded a trader. Our bankrupt act is broader in terms, and excludes no person who should, upon principles of commercial law, be included within the term "t a .: r." The commercial definition of a trader is, one who makes it his business to buy merchandise or things ordinarily the subjects of commerce and traffic. The debtor was clearly engaged in that sort of business, and comes strictly within this commercial definition. Upon the whole, therefore, we find the several acts of bankruptcy charged fully established.